CHICAGO, ROCK ISLAND & PACIFIC RAILROAD

COMPANY *v.* BRITT.

4-3452

Opinion delivered July 2, 1934.

*Thos. S. Buzbee, H. T. Harrison* and *A. S. Buzbee,* for appellant.

*Sam T. Poe, Tom Poe* and *McDonald Poe,* for appellee.

MEHAFFY, J. This action was begun in the Scott Circuit Court against the appellant and Dr. J. P. Runyan for injuries alleged to have been sustained by the ap-

pellee, Mrs. Sue Britt, by reason of an infection in her eye, the result of what she charged to be negligence on the part of Dr. Runyan. Dr. Runyan was chief surgeon at Little Rock for the appellant company. Mrs. Britt was employed as a registered nurse by the appellant. The following contract was introduced in evidence:

"This agreement, made in duplicate this 15th day of March, 1928, between The Chicago, Rock Island & Pacific Railway Company, by S. C. Plummer, M. D., its chief surgeon, as first party, and Drs. J. P. Runyan, J. P. Sheppard, L. D. Reagan, C. E. Witt, J. P. Delaney and Mrs. W. S. Britt, M. D., of Little Rock, State of Arkansas, as second party (known as the St. Luke's Hospital Clinic) WITNESSETH, That,

"1. The second party is hereby appointed district and hospital surgeons of the first party for Little Rock, in the State of Arkansas and vicinity, and he hereby accepts said appointment.

"2. The second party agrees, for the consideration hereinafter provided, as follows:

"(a) To render all proper and necessary surgical and medical attention to the employees of the first party residing within the territory covered hereby, also to all such employees of the first party as shall be injured accidentally while in discharge of duty, no matter where residing, whenever requested so to do by any of such employees.

"(b) To render, at any point within the jurisdiction covered hereby, similar services to all passengers injured while traveling upon the road of, or injured on the premises of, the first party, when requested so to do by any officer, conductor, or station agent thereof.

"(c) To render, at any point within the jurisdiction covered hereby, such services as shall constitute actual emergency attention necessary for the relief of any injured trespasser, until he can be turned over to public authorities or friends.

"(d) To render in all other cases, such as crossing accidents and the like, actual emergency attention necessary for the relief of any such injured person,

when requested so to do by an authorized representative of the first party, and also such further attention as may be so requested by the first party.

"(e) To fill out full reports in duplicate on the First Report Blank, Form 1601, and to forward this on the first passenger train after the services are rendered, one report to the claim agent, in whose territory the injury occurred, and one to the office of the chief surgeon, at Chicago. Should the injury be serious, all the facts in the case should be reported at once by railroad telegraph to the office of the chief surgeon.

"(f) In cases of serious injury, of which the first party assumes permanent charge, to fill out in duplicate supplementary report on form 1609 every five days, until the indications are all of a favorable character, and to forward the same in the manner provided for first report blanks. In addition to these reports in serious cases, a supplementary report must be made in duplicate at least every ten days in all cases.

"(g) In discharging a case, either in the event of recovery or transfer to the care of other surgeon, or death, to fill out in duplicate final report blanks form 1602, and to forward the same in the manner provided for first report blanks. Also fill out form 1610 (release blank) and hand it to the patient to take to his employing officer. Mail duplicate of this to the district claim agent.

"All of the above apply to every case, no matter how trivial in appearance and whether the company is thought liable or not.

"Note: No formal operation of serious character must be attempted until full reaction from the shock of injury is established, with exceptions in two conditions, viz., grave hemorrhage, or injury to abdominal viscera.

"(h) To make all such examinations as may be required by the first party in connection with its personal record and pension bureau.

"(i) To make all examinations of employees or persons desired by the legal and claim departments of the first party, sending one copy of the report indicating

the result of such examinations to the chief surgeon, and one copy thereof to the claim agent.

"(j) To attend in behalf of the first party as a witness in any investigation or judicial proceeding where the testimony of the second party may be required or desired.

"(k) To faithfully observe and carry out all orders, directions and regulations which said chief surgeon shall from time to time transmit or cause to be transmitted to the second party.

"(l) The second party will furnish without charge, instruments, anaesthetics, splints, medicines or anything necessary for the performance of any operation, treatment of fracture or dressing of wounds.

"(m) Drugs, other than those required for first attention, must be paid for by the patient, except in the hospital association district.

"Medical Treatment in Hospital Association District

"(n) The foregoing provisions of this contract will also govern employment of surgeons at points on the lines of the company in the hospital association district, except that the following instructions shall be followed as to those entitled to free attention.

"Those Entitled to Free Attention

"(o) Contributors to the hospital fund, who are sick (or injured while off duty) are entitled to free attention at the expense of the hospital fund when they present identification slip from the employing officer showing that they are entitled to attention.

"(p) All bills account hospital association district for hospital, nursing and ambulance services, and for surgical services where the employee was not injured in discharge of duty, shall be presented monthly in duplicate, on form 1619; hospital, nurse and ambulance bills to bear the approval of second party. In the cases of employees injured in discharge of duty, duplicate bills are not required, but every bill presented should bear the approval of second party.

"3. It is expressly agreed between the parties hereto that the compensation hereinafter provided for

shall include all surgical and medical attention or service of every nature and description which the second party shall render as aforesaid, including all dressings of injuries, amputations, adjustment of fractures, reducing of dislocations, ligations of arteries, and trephining and raising depressed fractures of skull, and all microscopical, pathological and X-ray examinations which may be required in the proper treatment of the patient, or may be desired by the first party.

"4. In consideration of all services and attention to be rendered by the second party under this agreement, the first party agrees to pay to the second party, and the second party agrees to accept from the first party, in full compensation therefor, the sum of Four Hundred One and 50/100 Dollars per month, beginning with the month of March, 1928; provided, however, that if the second party shall at any time be required, for any of the purposes aforesaid to make trips away from the city where his office is maintained, he shall be paid in addition thereto a per diem of twenty-five dollars, together with his actual expenses. It is further expressly agreed that the first party shall not be held for any other expenses of the second party, whether for office rent, lights, books, instruments, rubber gloves, furniture, dressings, or of any other nature or character whatsoever.

"5. Payments hereunder by the first party shall be made to the second party at his place of residence as aforesaid within a reasonable time after the end of each calendar month.

"6. It is further agreed that either party hereto may terminate this agreement by giving to the other thirty days' notice in writing, provided that the first party, by its chief surgeon, may at any time forthwith terminate this agreement for the failure of the second party to faithfully and fully perform any of the service contracted by him hereunder to be performed.

"7. The courtesies of the first party are extended to the second party in the form of an annual pass.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

"The Chicago, Rock Island & Pacific
Railway Company,
"By S. C. Plummer, M. D.,
"Its Chief Surgeon.
"J. P. Runyan, M. D.,
"J. P. Sheppard,
"L. D. Reagan,
"C. E. Witt,
"J. P. Delaney,
"Mrs. W. S. Britt."

The following stipulation was introduced in evidence:

"It is agreed by and between all parties hereto that the following statement of facts may be read in evidence at the trial of the above entitled action and treated as true, to-wit:

"At the time the surgical operation was performed on Wilson Cobbs by Dr. J. P. Runyan, with the assistance of Mrs. Sue Britt and others, Wilson Cobbs was in the employ of the Chicago, Rock Island & Pacific Railway Company. Wilson Cobbs, at the time the operation was performed upon him, was entitled to medical and surgical treatment and hospital care, afforded certain employees of the Chicago, Rock Island & Pacific Railway Company employed at, and near, Little Rock, Arkansas. That the operation being performed on Wilson Cobbs was not for a condition resulting from an injury received while working as an employee of The Chicago, Rock Island & Pacific Railway Company."

In addition to the contract and stipulation, witnesses were introduced whose evidence tends to show that the operation on Wilson Cobbs by Dr. Runyan was negligently performed, and that that negligence was the cause of the injury to the appellee. The evidence shows that the appellee was assisting Dr. Runyan, and that in the operation a gland was burst by the negligence of Dr. Runyan, and that the contents went into her eye and

caused it to become infected and caused the loss of the eye. The evidence as to the manner in which the operation was performed, that is, whether Dr. Runyan was negligent in performing the operation is in conflict, and it would serve no useful purpose to set it out at length. Several witnesses testified that a surgeon, before performing the operation which Runyan performed, would have awaited the making of a laboratory test before operating when no emergency existed. There was also evidence to the effect that the surgeon should have warned his assistants to look out before he dissected or attempted to tear out the gland. That this warning should have been given to protect the assistants, as none of them would know when the surgeon intended to dissect the gland. The evidence also showed that it was customary for the surgeon to have a sponge or piece of gauze in his hand to prevent pus or infected tissue from flying out. They usually hold a piece of gauze in one hand, holding it over the working fingers so that if anything does break or fly out, the gauze catches it or stops it so it does not get into the face. The undisputed evidence shows that the surgeon took hold of the gland with his fingers, that it burst, and the infected tissue went into the eye of appellee, causing the injury complained of. As to whether the operation was negligently performed was a question of fact for the jury. The jury's verdict is conclusive here on questions of fact, even though we might believe that the preponderance of the evidence was the other way. This court does not pass on the credibility of witnesses nor the weight to be given their testimony. The jury returned a verdict against the executor of the estate of Dr. Runyan and against the Chicago, Rock Island & Pacific Railway Company for $12,000, and judgment was entered accordingly. To reverse this judgment the Chicago, Rock Island & Pacific Railway Company prosecutes this appeal. There was considerable testimony as to whether the appellant was negligent in employing or retaining an incompetent surgeon. It is unnecessary to set out this testimony because, as we understand the law, if the operation was negligently performed, and this negligence caused the

injury, the appellant is liable without regard to whether the appellant exercised care in the selection or retention of the surgeon, the sole question being, whether he was negligent in the operation and whether this negligence caused the injury complained of. The appellant cites many cases to sustain its contention that the appellant is only liable if it fails to exercise care in the selection or retention of the surgeon, and if it exercises care in this respect, it contends that it is not liable although the injury may have been caused by Dr. Runyan's negligence.

The first case relied on is *Union Pac. Ry. Co.* v. *Artist,* 60 Fed. 365, decided in 1894. The court's decision in that case is based squarely on its finding that the hospital was a charitable institution, and the facts are wholly unlike the facts in the instant case. The next case relied on is *Big Stone Gap Iron Co.* v. *Ketron,* 102 Va. 23, 45 S. E. 740, 102 Am. St. Rep. 839. In that case there was no evidence of a contract like the contract in the case at bar. The facts are wholly different, and the opinion, as we view it, has no application in this case.

Appellant also calls attention to *Texas Central Ry. Co.* v. *Zummwalt,* 103 Tex. 603, 132 S. W. 113. In that case the contract was wholly different from the contract in the present case. The surgeon agreed to establish and maintain a hospital at his own expense, and the railroad company simply agreed to collect fifty cents from each of its employees, and turn over the money thus collected to the surgeon for his compensation. It did not agree to pay him anything, but simply agreed to collect from the employees and turn the money so collected over to him. The next case to which attention is called is *Louisville & Nashville Ry. Co.* v. *Foard,* 104 Ky. 456, 47 S. W. 742. The facts in this case are so wholly different from the facts in the case at bar that we think it has no application at all. The next case is *Cummings* v. *C. & N. W. Ry. Co.,* 189 Ill. 608, 60 N. E. 51. The only thing the court of Illinois decided was that under the statutes of the State of Illinois the appeal in that case could not be maintained. The next case is *Fire Ins. Patrol* v. *Boyd,* 120 Pa. 624, 15 Atl. 553, 1 L. R. A. 417, 6 Am. St. Rep. 745. The court

held in that case that the appellant was a public charity, and that is the reason and the only reason that it was held not liable. Appellant then calls attention to *Phillips* v. *Ry. Co.*, 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167. The court in that case said: "Nor are institutions of the character disclosed by this record exempted from liability by the mere employment of competent servants. They must go further and competently treat the patients received. In such case they occupy the position of ordinary physicians and surgeons and are bound by the same rules, which are too familiar for repetition here. If they undertake to furnish the treatment not as a charity, they stand in no different light than the ordinary physician. But this question is really beside the issue in this case. No one can read this record without concluding that, if the thin corporate shell of the hospital is broken, the yolk therein is the defendant; * * * that the Hospital Association is operated for the benefit of the defendant as much as for the benefit of the employees is too apparent from this record."

The contract in the case last quoted is similar to the contract in the instant case, and the court held the railway company liable. In the case at bar it is claimed that the appellant does not operate the hospital for profit. There is, however, no showing in the evidence how much is collected from the employees nor what the expenses paid by the railway company in the operation of the hospital amount to, but, as said in the case last quoted, it is certainly operated as much for the benefit of the railway company as it is for the employees. The contract in this case expressly provides: "That the surgeon is appointed district and hospital surgeons for the first party in Little Rock in the State of Arkansas, and that he hereby accepts said appointment. The contract also provides that the second party, that is Dr. Runyan, shall observe and carry out all orders, directions and regulations which said chief surgeon shall from time to time transmit or cause to be transmitted to the second party. Unlike the contract in one of the cases relied on by appellant, this contract does not provide for the col-

lection of the money from the employees, but it is expressly provided that, in consideration of the services of the party of the second part the first party, that is, the railway company, agrees to pay the second party and the second party agrees to accept from the first party, in full compensation therefor, the sum of $401.50 per month. It then provides that, if at any time the second party is requested to make trips away from the city where his office is maintained, he shall be paid $25 a day, together with actual expenses. The contract provides that either party may terminate the agreement by giving thirty days' notice, provided that the first party, by its chief surgeon, may at any time forthwith terminate this agreement for failure of the second party to faithfully and fully perform any of the services contracted by him to be performed. It also provides for giving the parties annual passes. In other words, this is purely a contract of employment. The contract giving the railway company the right not only to hire but to discharge and the right to control the actions of the parties of the second part. It is true this contract was signed by several persons besides Runyan, but the undisputed evidence is that Runyan was in charge of the hospital, and that the other parties were under his supervision and control. The appellant also relied upon the case of *Ark. Midland Co.* v. *Pearson*, 98 Ark. 399, 135 S. W. 917. That case holds, in effect, that where the railway company gratuitously assumed to collect and preserve from its employees and therefrom to provide hospital accommodations and medical attention to its injured employees without any profit or gain therefrom, it will not be responsible for the negligence of the physicians and surgeons employed at such hospital, provided they use ordinary care in their selection.

It will be observed that the court said that where the railway company gratuitously assumed to collect and preserve a fund therefrom to provide hospital accommodations and medical attention without gain or profit, it would not be liable. There is no evidence in the instant case that it gratuitously did this, and there is no evidence

in the instant case that it paid the surgeons and hospital employees from this fund. One witness testified that a certain portion was paid from the employees' fund and a part by the appellant, but the evidence also shows that the fund collected from employees was kept with appellant's money. The contract here provides, without reference to this fund, to pay the surgeon a certain amount per month. Appellant hired him, entered into a legal contract in which it reserved the right to the chief surgeon to discharge him at any time. The court also said, in the last case mentioned, it was not contemplated by such employees, in their contribution to this fund, that it would be used in the payment of damages for the negligence or malpractice of physicians employed in the operation of such department, and certainly the railway company that assumed gratuitously to collect and preserve such fund and employ competent physicians and surgeons to operate without any profit or gain therefrom should not be required to pay damages for malpractice, it being no part of its business to maintain a hospital. There was nothing in that case, as we understand it, indicating what was in the charter of the railway company, and there is nothing in the instant case indicating what the charter provides with reference to the hospital. The court holds in the last case, at most, that it can only be considered a trustee for the proper administration and expenditure of such fund and should be held only to ordinary care in the selection of competent and skillful physicians to administer relief, etc.

The contract in this case is wholly different. They are not in this contract trustees for anybody or any fund but they contract to pay the surgeon and employees without regard to any fund. The court further said in that case, if it agreed and contracted with such employees in consideration of the fees paid by them to furnish proper medical attention the rule might be different. In the instant case, it did contract to furnish the medical attention and agreed to pay for same, and the surgeon agreed to perform the services and accept the pay. It is wholly immaterial whether the railway company ac-

cumulated a fund by taking a certain amount from the wages and salaries of its employees or whether it created the fund by charging for freight and passenger services or how it got it. If an employer enters into a contract with an employee to pay him a certain sum per month for his services, neither the servant nor any one else has any right to inquire how or where the master gets the money. He is required to pay and agrees to pay, and the relation of master and servant existed, and there was no relation, so far as the record in this case shows, of administering the fund as trustee.

There is nothing in the contract in this case about the employees contributing except the statement that the contributors to the Hospital Fund who are sick (or injured while off duty) are entitled to free attention at the expense of the hospital fund when they present identification slip from the employing officer showing that they are entitled to attention.

In the case of *St. Louis S. W. Ry. Co.* v. *Webb,* 170 Ark. 1089, 282 S. W. 966, the court stated that by the contract introduced in that case it was shown that the railway company operated the hospital under agreement as a trustee. There is no evidence in the instant case to that effect. The court said also in that case that the superintendent and all others drawing salaries were paid out of this hospital fund. The contract in the instant case is to pay without any regard to the hospital fund, but the court also said in the Webb case: "We think the jury was warranted in finding that the railway company was in complete control of the hospital as trustee through the power conferred on it by the trust agreement of appointing and discharging the superintendent who was completely in control subject only to the right of Neislar to inspect and to report to the labor unions any inattention to any of the members of the unions which had selected him for that purpose." The court then quoted from Sears' "Trust Estates as Business Companies," as follows: "That trustees are liable in their personal capacity for acts of negligence or other torts committed by themselves or their agents in matters

relating to the trust seems not seriously disputed.'' The court in that case further said: ''There is a humanitarian doctrine involved here. The patient was carried to the hospital where the operation could have been performed. The theory of the plaintiff's case is, not that there was any negligence in the treatment given the patient, but that there was a withholding of treatment which was never rendered, and nothing was done, except to send the patient to another hospital, and this only after a delay of several hours.'' We think the principles announced in that case are controlling here. Any person or corporation who makes a contract of employment with another agreeing to pay the other for his services and the other person accepts the employment and agrees to do the work, if he is negligent in doing the work, the employer is liable. . We think there was just a question of negligence, and there was ample evidence to justify the jury's verdict.

Appellant complains about the instructions, but, in the view we take of the law, the instructions complained about were not prejudicial. The court instructed the jury with reference to the exercise of care in employing and retaining a surgeon. This instruction was more favorable to the appellant than it was entitled to, and, of course, it cannot complain about the court giving it. This is simply a question of master and servant and of liability of the master for the wrongful conduct of the servant, and, as we have said, we think that whether the servant was guilty of negligence was a question of fact, and the finding of the jury is conclusive here. There was no question, we think, of fellow-servants in the case. Of course, it would be immaterial whether Mrs. Britt and Dr. Runyan were fellow-servants or not. The appellant, however, contends that neither Dr. Runyan nor Mrs. Britt was in the employ of the Chicago, Rock Island & Pacific Ry. Company in performing this operation; that the evidence shows that the patient was being treated for the Rock Island Employees' Association. The appellant may have had a contract with the Rock Island Employees' Association to treat patients like the one being

treated, but the contract in this case, which certainly governs the relation of the appellant with Dr. Runyan and Mrs. Britt, clearly shows that they were acting for the appellant. The evidence shows that Dr. Runyan was in complete charge of the hospital under his contract with appellant and had supervision of the other employees. Dr. Runyan died after the suit was begun, and there was no appeal from the judgment against his estate.

We find no reversible error, and the judgment is affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.

McHANEY, J., (dissenting). While performing a surgical operation on a colored employee of appellant at the Baptist State Hospital on October 7, 1927, and while removing an enlarged and infected gland from the inguinal region or groin of said employee, the late Dr. J. P. Runyan punctured said gland or it was caused to burst and the fluid or exudate therefrom was thrown upon him and appellee, some of which struck her in the left eye. Appellee's eye became infected therefrom causing the loss of said eye, and said infection caused her to undergo other serious and painful operations, as well as the removal of said eye, from which she suffered intense pain. Her personal appearance has been greatly marred because thereof.

Appellee sued Dr. Runyan and appellant for damages, alleging that both were in the employ of appellant —she as head nurse in said hospital and as an assistant to him, and he as head surgeon. She alleged negligence on the part of Dr. Runyan and appellant in failing to warn her of the infectious condition of said gland, and that Dr. Runyan carelessly and negligently cut into said gland and ruptured it without warning her that he intended so to do and without first ascertaining whether it was infected. Later appellee amended her complaint as follows: "It is stated in the complaint, and the first amendment thereto, that an infected gland in the lower right abdominal region of Wilson Cobbs was carelessly and negligently cut into, or ruptured, by the defendant, Dr. J. P. Runyan, while using a surgical instrument,

resulting in a quantity of pus and infected tissue from the gland flying into the left eye of plaintiff and injuring same. This is, in part, erroneous. At the time the infected gland was ruptured, or torn, Dr. J. P. Runyan did not have in his hand a surgical instrument. The infected gland was carelessly and negligently ruptured, or torn, by the defendant, Dr. J. P. Runyan, while attempting to remove the infected gland with his hands and fingers, and without the use of a surgical instrument.

"At all times mentioned in the complaint, and amendments thereto, the defendant, Dr. J. P. Runyan, was a careless, incompetent, negligent and an unskillful physician and surgeon. At all times mentioned in the complaint, and amendments thereto, the defendant, the Chicago, Rock Island & Pacific Railway Company, knew, or by the exercise of ordinary care, could have known that the defendant, Dr. J. P. Runyan, was a careless, incompetent, negligent and an unskillful physician and surgeon." These latter allegations of negligence were denied by Dr. Runyan and appellant. The case went to trial on these issues alone and was submitted to the jury, first, on the negligence of Dr. Runyan in the performance of said operation, and, second, on the negligence of appellant in employing a "careless, incompetent, negligent and unskillful physician and surgeon"; that appellant knew or by the exercise of ordinary care could have known Dr. Runyan to be "a careless, incompetent, negligent and unskillful physician and surgeon."

It becomes unnecessary to discuss the alleged negligence of Dr. Runyan in performing the particular operation, although, if he were free from such alleged negligence, no recovery could be had against either, no matter what his general reputation may have been or the knowledge of appellant with reference thereto. I assume, for the purpose of this opinion, that Dr. Runyan was negligent as alleged, and that the evidence thereof is sufficient to support the verdict against him, although, in my opinion, there was no such substantial evidence. Assuming, however, that he was negligent in this particular operation, what is the measure of appellant's liability? It is undisputed in this record that appellant did not own

the Baptist State Hospital, nor was it operating it, nor was it engaged in rendering hospital facilities and the services of physicians, surgeons and nurses to its sick and injured employees for profit. A small deduction was made by it from the wages of employees, which went into a hospital fund, for furnishing the facilities and services above mentioned to its employees. Under such circumstances, it has been the settled law in this State, since the decision of this court in *Arkansas Midland Railroad Co.* v. *Pearson*, 98 Ark. 399, 135 S. W. 917, that a "railroad company that assumed gratuitously to collect and preserve such fund and provide hospital accommodations and competent physicians and surgeons to operate it, without any profit or gain or hope thereof therefrom, should not be required to pay damages for such negligence or malpractice, it being no part of its business under its charter to maintain a hospital. At most, it can only be considered a trustee for the proper administration and expenditure of such fund, and should be held only to ordinary care in the selection of competent and skillful physicians to administer relief and provide attention to sick and injured employees." It was there further said that: "A physician cannot be regarded as an agent or servant in the usual sense of the term, since he is not and necessarily cannot be directed in the diagnosing of diseases and injuries and prescribing treatment therefor, his office being to exercise his best skill and judgment in such matter, without control from those by whom he is called or his fees are paid." See also *Runyan* v. *Goodrum*, 147 Ark. 481, 228 S. W. 397.

Counsel for appellee recognize this to be the law in this State and based their cause of action against appellant on the ground that it employed a careless and negligent physician in Dr. Runyan, and that it either knew he was a careless and negligent physician and surgeon, or by the exercise of ordinary care could have known it; and in instruction No. 1, given by the court at their request, the only hope expressed on which to hang a verdict against appellant is the same basis. Said instruction follows: "1. If you find, from a preponderance of the evidence that the plaintiff, Mrs. Sue Britt,

while assisting Dr. J. P. Runyan perform a surgical operation, and, while in the exercise of ordinary care for her own safety, was injured, and that Dr. J. P. Runyan, in performing the surgical operation, negligently failed to warn plaintiff that he intended to dissect the gland or tissue, and that both plaintiff and Dr. J. P. Runyan were, at the time the operation was performed, in the employ of, and performing duties required of them by, the defendant, the Chicago, Rock Island & Pacific Railway Company, and that before and at the time the operation was performed, Dr. J. P. Runyan was a careless, negligent, and an unskillful surgeon, and the defendant, the Chicago, Rock Island & Pacific Railway Company, at, and before, the time the operation was performed, knew or, by the exercise of ordinary care could have known, Dr. J. P. Runyan was a careless, negligent, and an unskillful surgeon, and that the defendant, the Chicago, Rock Island & Pacific Railway Company, negligently failed to use ordinary care in selecting, employing and retaining in its employ, Dr. J. P. Runyan, as a surgeon, and that the negligence of Dr. J. P. Runyan, if any, and, also, of the defendant, the Chicago, Rock Island & Pacific Railway Company, if any, was the proximate cause of the injury, if any, sustained by the plaintiff, then your verdict will be for the plaintiff, unless you should find the plaintiff, Mrs. Sue Britt, was guilty of contributory negligence or assumed the risk, as defined elsewhere in these instructions.''

What are the facts on which this instruction is based? No witness testified that Dr. Runyan was in fact ''a careless, negligent and an unskillful surgeon.'' Dr. Samuel G. Boyce, of Little Rock, said that Dr. Runyan had a general reputation in Little Rock of being careless and negligent. Mrs. Routh said that he was so considered. One witness testified that he was employed by appellant as switchman for a few months in the latter part of 1925, and that he had heard some of the employees say Dr. Runyan was careless and negligent—hard to find when he was wanted; that he saw a petition signed by 20 or 25 employees to have Dr. Runyan removed as chief surgeon, but he refused to sign it. Dr. L. M. Sipes,

pastor of the Pulaski Heights Baptist Church testified that Dr. Runyan was a good physician and surgeon, but mixed up in too many things. On the other hand, a large number of eminent physicians of Little Rock testified to the high standing and good reputation of Dr. Runyan as a physician and surgeon. No witness testified to any actual knowledge of appellant of his alleged negligence, carelessness or unskillfulness. The chief surgeon of appellant in Chicago, Dr. Plummer, who is in charge of the hospital department and who employed Dr. Runyan and appellee, testified positively that he had no knowledge of the charges; that Dr. Runyan had the reputation of being a skilled surgeon, had been chief surgeon for appellant at Little Rock for nearly 30 years at the time of his death; that he had never heard of the petition to remove him; that Dr. Runyan frequently attended meetings of district surgeons in Chicago, made addresses and read papers at said meetings; that he had visited Dr. Runyan's hospital in Little Rock, also the Baptist State Hospital, had observed his work, seen his equipment and knew his reputation to be that of a competent and skillful surgeon; that he had received no complaints as to his ability or competency or carefulness with his surgical work.

Now, the only duty imposed by law on appellant in this regard was to exercise ordinary care to select a capable, competent and skillful surgeon, or in keeping such a one in its employ. *Ark. Midland Rd. Co.* v. *Pearson, supra; St. L., I. M. & S. Ry. Co.* v. *Taylor,* 113 Ark. 445, 168 S. W. 564. Of course, if appellant knew or by the exercise of ordinary care should have known him to be incompetent, then appellant would be liable. It did not in fact so know. Should it have so known, exercising ordinary care? Although a petition was circulated in 1925, two years prior to appellee's injury, no witness testified as to what became of this petition. It may have been destroyed. It was not sent to Dr. Plummer, and, so far as this record discloses, it was not brought to the attention of any official of appellant. I cannot agree that the evidence of Dr. Boyce and the other lay-witnesses mentioned is sufficient to make a

question for the jury as to whether appellant should, in the exercise of ordinary care, have known of the bad reputation given him by such witnesses. Such knowledge must have been brought home to appellant, or such a notoriously bad reputation must have been established that a person exercising ordinary care must have known about it, or at least such a reputation as would justify the jury in inferring the fact of knowledge. The case of *St. L. S. W. Ry. Co.* v. *Webb*, 170 Ark. 1089, 282 S. W. 966, has no application here for in that case "it is pointed out that it is not charged that these doctors were lacking in skill or that they were negligent in their capacity as surgeons," which is the whole basis of this lawsuit, assuming Dr. Runyan to have been negligent.

But the majority opinion is based on the doctrine of *respondeat superior,*—that the relation of master and servant existed between appellant and Dr. Runyan. In the opinion it is said: "There was considerable testimony as to whether the appellant was negligent in employing or retaining an incompetent surgeon. It is unnecessary to set out this testimony because, as we understand the law, if the operation was negligently performed and this negligence caused the injury, the appellant is liable without regard to whether the appellant exercised care in the selection or retention of the surgeon, the sole question being, whether he was negligent in the operation and whether this negligence caused the injury complained of."

It is difficult to understand how the majority can make use of such language, since the only action of negligence on the part of appellant relied on and submitted to the jury is that already quoted in the amendment to the complaint and in instruction No. 1 heretofore set out in full. Appellee did not submit to the jury her right to recover from appellant on the sole ground of Dr. Runyan's negligence in the performance of the operation, but the only instruction asked or given for appellee required the jury to find, in addition to the negligence of Dr. Runyan, that appellant was negligent in the employment of a careless and unskillful surgeon. Now, since appellee based her cause of action against appellant on

this sole ground and submitted same to the jury on this sole ground, she ought to be required to stand or fall by the same ground in this court.

It seems to me the majority have overruled the cases of *Ark. Midland Railroad Co.* v. *Pearson* and *Runyan* v. *Goodrum, supra,* although an attempt is made to distinguish them. In doing so, it is said in this case there is no evidence that appellant ''gratuitously assumed to collect and preserve a fund therefrom to provide hospital accommodations and medical attention without gain or profit.'' In my opinion the evidence is undisputed that such is the fact. The witness Blessing testified that the hospital association got its funds from the employees from deductions from their salaries made by the railroad company, the amount of deductions being dependant on the occupation the employee was in as it does at the present time. The money thus collected was paid out on the order of the chief surgeon, and that the Rock Island did not charge anything for handling the fund. Dr. Plummer testified that he had been connected with the Rock Island Hospital Association since 1902; that the fund for the association was collected from the old C. O. & G. Railroad employees just as it is now by deductions once each month from salaries and wages of employees of appellant; that he has administered the fund since 1916; that Mr. Shonlou, his assistant, attended to the details; and that his salary was not paid out of the hospital fund, but was paid by appellant, but that a portion of Shonlou's salary, $75 per month, was paid out of said fund. Shoulou testified that Dr. Runyan and associates, known as Baptist State Hospital Clinic, which included appellee, were paid $401.50 per month, of which $162.75 was paid by appellant and $238.75 paid by the hospital association. This testimony was not disputed. It shows unequivocally that appellant not only made no charge for collecting and handling the fund for the Employees Hospital Association, but paid a substantial portion of the expense of its operation out of its own funds. I am therefore of the opinion that the rule announced in *Arkansas Midland Railroad Co.* v. *Pearson,*

*supra,* is controlling and should be followed or the case overruled.

In *Runyan* v. *Goodrum,* 147 Ark. 481, 228 S. W. 397, the same question was involved. This court there held "that the relation of master and servant cannot exist between physicians and surgeons who are not X-ray specialists themselves and the X-ray special or Roentgenologist, whom they employ to assist them in the diagnosis and treatment of diseases." The case of *Ark. Midland Railroad Co.* v. *Pearson* was cited and quoted from with approval, as also the cases of *Keller* v. *Lewis,* 65 Ark. 578, 47 S. W. 755, and *Norton* v. *Hefner,* 132 Ark. 18, 198 S. W. 97, the following being quoted from the latter case: "This view of the law is based upon the theory that the doctrine of *respondeat superior* applies only in case of the negligence of a servant who acts under the direction and control of the master (*De Forrest* v. *Wright,* 2 Mich. 368), and does not apply to a physicain or other professional man who, when employed, acts upon his own initiative without direction from others." In that case, *Norton* v. *Hefner,* Dr. Norton performed an operation on Hefner's wife and arranged with a young physician at the hospital to look after the patient until she recovered. Hefner sued Dr. Norton for damages for the alleged negligence of the young physician whom he had left in charge of the patient. In addition to the language last above quoted, the court said: "Appellant (Norton) was not guilty of negligence in the performance of the operation, nor in the selection of a physician to continue the treatment after he left the city. Not being negligent in these respects, he cannot be held responsible for the negligence of the other physician who was left in charge merely because the other physician took charge on his suggestion and arrangement."

I am therefore of the opinion that the above cases demonstrate that the relation of master and servant did not exist between appellant and Dr. Runyan, and that the doctrine of *respondeat superior* cannot apply in this case, even though Dr. Runyan may have been negligent in performing the operation.

I respectfully dissent, and am of the opinion the case should be reversed and dismissed. I am authorized to say that Mr. Justice SMITH and Mr. Justice BUTLER concur in the views here expressed.