J. C. MEYER & Co. v. SMITH.

CONTRACT : *Landlord and tenant.*
  When a lessee abandons the leased premises, refuses to pay rent, and repudiates his tenancy without any fault of the lessor, the latter may stand upon the contract of lease and recover the whole rent; and in such case he may take possession and re-rent the premises for the benefit of whom it may concern, and credit the proceeds upon the first lease.

APPEAL from *Jefferson* Circuit Court.
Hon. JOHN A. WILLIAMS, Circuit Judge.
*N. T. White,* for appellant.
*Carlton & McCain, contra.*

EAKIN, J. :
K. Smith sued J. C. Meyer & Co., who were merchants doing business in Pine Bluff, for the rent of a certain storehouse situated upon a plantation upon the Arkansas river. He filed with his complaint an instrument of writing, as follows :

"GREENWOOD, March 15, 1876.
"We hereby certify that we are willing to pay K. Smith the
" sum of $50.00 per month for the store known as the K.
" Smith store, from to-day until the first day of January,
" 1877, with privilege of the same until first day of May, 1877,
" at the same rate.
"S. G. MEYER & Co.,
"Per EMIL MEYER."

Defendants denied the debt and the execution of the writing. They set up further that the plaintiff, in disregard of the supposed contract, had let the same premises to a third party and put him in possession from October 1, 1876, to the end of the year.

It was shown by the testimony that the store-house in question had been renting for $50 per month previous to the time

of the supposed lease to Meyer & Co., and had been rented to one Sunnenshine at that rate for the year. Sunnenshine had a stock of goods in it, and being indebted to Meyer & Co., about the time of the date of the instrument, sold out to them. Emil Meyer was in their employment as a salesman, and they sent him to take charge of the stock, make a schedule, etc. They had been advised of the renting by Sunnenshine for the year, and of the rates. Emil Meyer, as their agent, executed the instrument on behalf of the firm. He says he had no authority from the firm to do so, or to sign their name, but thinks he told Sol. Meyer, one of the firm, of the contract next day, on his return.

Meyer & Co., kept possession of the store-house, selling goods, etc., for about six weeks, when they abandoned possession, leaving it open and unprotected, and giving no notice of their intentions to Smith. Whilst so occupying, and shortly after the contract was made, Sol. Meyer came to the place and had a conversation with Smith, telling him they were going to put in a large stock of groceries there. Smith says that in the conversation, Sol. Meyer remarked that he thought the rent was too much. Smith wrote two or three letters afterwards to the firm about the rent, but did not mention the written contract made by Emil. He received no answers. He never made any demand of the rent under the contract, but says he furnished Emil with a copy of it when executed. Sunnenshine says that when he told Meyer & Co. of the rents, at the time of his sale, he advised them that they must make the arrangements for the future, and that J. C. Meyer, one of the firm, replied that Emil Meyer would go down with him and arrange that matter. After the sale Sunnenshine continued in the store whilst it was kept up, selling goods as the agent of the firm. After the abandonment of the house it lay vacant until

about the 1st of October, when Smith let it to Scherm, a third party, for the remainder of the year, at $25 per month.

Sol. Meyer, another partner, testified that Emil was sent to take stock of the goods and accounts, to see if they came up to the representations, and that he had no authority to use the firm name in executing the instrument. He denies that he knew of the instrument until suit began ; acknowledes that the firm received the letters concerning the rent, and did not answer them, but says the letters never mentioned the contract, nor any specific sum as due ; says he does not remember having a conversation with Smith about the rent at the time he spoke with him about taking a large stock of goods there, nor does he remember that Emil ever told him about the contract.

J. C. Meyer denies that he told Sunnenshine that Emil would arrange for the rents ; admits that Sunnenshine told him of his own contract for the year, but says that Sunnenshine claimed that he had unsettled accounts with Smith, and did not know that any rents would be due. He concurs with Sol. Meyer in denying the authority of Emil, and all knowledge of the written instrument before suit. This was substantially all the evidence.

The court, upon trial, on motion of the plaintiff, instructed the jury substantially :

1st. That if they found that Emil executed the writing without authority, but that defendants knew of it, and afterwards continued to use the store-house, without expressing any dissent within a reasonable time, it amounted to a ratification.

2d. If, from all the circumstances, the jury believed that Emil had authority to rent, and did rent, and defendants used and occupied after the renting, they must find for the plaintiff ; and,

3d. If the jury believed that defendants did ratify the contract, it did not matter whether they used and occupied it the

whole time or not, except the time it was occupied by Scherm. This last instruction was afterwards explained to the jury by the court, as follows :

"The amount of rent received by Smith from Scherm should be credited by the jury upon the entire amount of rent claimed by Smith, as set out in the contract, if they shall find the contract binding upon the defendants."

Defendants asked six instructions. The first, third and fourth were given, to the effect, that the agent could not bind the principal outside of the scope of his authority ; that if he had no authority to do so at the time he executed the writing, and the defendants did not afterwards ratify it, they must find for the defendants ; and that the burden of proof was on the plaintiff to show the power or the ratification, which should be done by preponderating testimony.

The instructions refused were as follows :

" 2d. The occupation of the store-house, after the execu-
" tion of the writing is not sufficient ratification as would bind
" defendants for the payment of the rents, and unless the jury
" find from the evidence that the defendants were notified of
" the existence of the writing before they left the store, they
" will find for defendants."

" 5th. If the jury find from the testimony that the plaintiff
" violated his contract with Meyer & Co., (if any did exist) by
" renting the store-house to others before the expiration of
" the time for which it was let, then in law he cannot recover,
" and they must find for defendants."

" 6th. The writing sued on in this case, if it be a contract
" at all, and binding on defendants, is an entirety for the full
" time specified therein ; and if the plaintiff, by his own act
" has so treated the same as to place it beyond the power of
" himself to have the property always, during the term of the

J. C. Meyer & Co. vs. Smith.

" lease, ready for the occupation of the defendants, he cannot
" recover for any part thereof."

In lieu of the second instruction, the court. on its own
motion, gave this: "The occupancy of the store-house by
" Meyer & Co., is no ratification of the contract made by Emil
" Meyer, unless they were aware, at the time they so occupied
" it, of the existence of the contract and its terms."

There was a verdict and judgment for the plaintiff in the
sum of $400—motion for new trial on the ground that the ver-
dict was not sustained by law and evidence, and because of
error in giving and refusing instructions. The motion was
overruled, exceptions taken and appeal.

It was the province of the jury to determine whether Emil
Meyer had express or implied authority to bind the firm of
Meyer & Co., by the contract of renting, or, if they found
none, to determine whether or not the firm had ratified it after-
wards. The instructions given for plaintiff and defendants,
fairly presented these questions to the jury with all due quali-
fications, and with correct instruction as to what should guide
them in determining upon the matter of ratification. There
was evidence to justify the jury in finding that Emil Meyer had
been expressly authorized to make the contract; also evidence
that he had reported it to them, and they knew of it and acted
under it. There is a conflict of evidence on these points, but
the verdict of the jury seems sufficiently well founded to sus-
tain their finding as to the validity of the contract, and the
liability of defendants, unless there be some valid defense.

The defense relied upon is, that the plaintiff himself violated
the contract by entering upon the premises on the first of Octo-
ber, and putting in another tenant for the remainder of the
year, thereby rendering himself unable to give possession to
defendants, and protect them in their quiet enjoyment. They
contend that if the contract is relied upon by plaintiff, that

contract itself vested in them the right to let the house lie vacant, or to keep it in reserve for any possible uses that might chance to be required. Certainly that is the law, but there are no facts to sustain such a view of the case. They kept the house about six weeks, refused to respond to all letters concerning the rents, withdrew from occupancy, and left the house open and unprotected. They never intimated to the landlord any design to return. Do not now say they had any intention or desire to do so. They never acknowledged any liability for rent after a short occupation to serve their business purposes, but acted in such a manner as to indicate, beyond doubt, their fixed purpose to repudiate the tenancy.

Supposing the contract to be valid, as the jury must have found, the law applicable to the case would be, that if they further found that defendants had abandoned the occupation, refused to pay rents, and repudiated the tenancy, without any fault of the lessor, the latter might stand upon his contract and recover the whole rent. He was under no obligation to the defendants to take back his property and do the best he could for the remainder of the term. But he was not precluded from taking possession upon pain of forfeiture of his contract. He was not obliged to stand by and see his property abandoned, and open to the elements, and all manner of trespassers. He might take it in charge, without any wrongful act, and at his peril might re-rent for the benefit of whom it might concern. The same principle applies to these chattel interests which applies to goods, bargained for and not taken. The vendor is not obliged to abandon possession and throw them away. He may re-sell and credit the proceeds on the contract. This is for the benefit of the vendee, as in this case the re-letting was *pro tanto* for the benefit of the lessees.

Had the lessees, at any time, returned and claimed their lease, or had they shown any fault, or gross misconduct in the

Ellsworth vs. Ha'e, Admx.,

management of the property after plaiatiff resumed possession, or that he had let it at grossly inadequate rates, new questions might have arisen. But the onus of this showing was on defendants, and in the absence of evidence of what the property mlght reasonably have been rented for at the end of the year, for the short period of three months, it was not erroneous to charge the jury to deduct from the contract price the amount actually received.

We find no substantial error in the instructions, taken all together, or in refusing those not given. The matter was fairly presented to the jury, and upon the whole case the judgment seems right.