BROWNE *v.* DUGAN.

4-3465

Opinion delivered June 25, 1934.

*James R. Campbell, C. T. Cotham* and *Walter Hebert,* for appellants.

*Geo. P. Whittington,* for appellee.

BUTLER, J. Mrs. Katheryn C. Dugan is the owner of an office building in the city of Hot Springs. She leased offices to the appellant, Dr. Browne, and thirteen others. These tenants abandoned their leases, and Mrs. Dugan brought suit to collect for the rents which had accrued up to the time of the bringing of her suit. The trial resulted in a verdict for the defendants, and Mrs. Dugan appealed to this court, which, in an opinion delivered March 13, 1933, reversed the judgment of the

lower court for error in refusing to give certain instructions requested by Mrs. Dugan. *Dugan* v. *Browne,* 187 Ark. 12, 58 S. W. (2d) 426. On remand, the case was again submitted to a jury, which found in favor of Mrs. Dugan, and from the judgment based upon that verdict comes this appeal.

At the beginning of the trial, it was stipulated that the fourteen leases exhibited with the complaint were executed by the defendants and the plaintiff lessor; that the defendants had paid no other rent than that stated in the complaint, with the exception of Dr. W. H. Deadrick; that they had not paid the amounts alleged in the complaint as the balance due of rent, except the said Deadrick who would be entitled to a credit of $480. The lease provided that the lessor should furnish necessary heat, light, gas, water, elevator and janitor service during the term of the lease. The defense tendered by defendants when the case was first tried was that the lessor had failed to comply with this agreement, thereby breaching the contract and justifying the defendants in abandoning the lease. At the trial on remand, the same defense was pleaded, and by an amendment to the answer the following further defense was offered: "That, in connection with and incident to the express covenant made by plaintiff (appellee here) to furnish defendants (appellants here) as tenants of said office building the necessary heat, light, gas, water, elevator and janitor. service required by defendants as such tenants, the plaintiff undertook to furnish and install the necessary plumbing fixtures, lavatories, water closets, sewer pipes, etc., required to accommodate the defendants as tenants of said building and undertook and agreed to keep such fixtures in proper condition and repair during the term of said leases." The defendants alleged that plaintiff did not furnish the necessary plumbing fixtures, etc., but allowed the same to become defective and out of repair, and, although frequently requested to put them in proper condition, she neglected and refused to remedy them, thereby breaching her contract and justifying the defendants in abandoning the premises.

To the answer as amended the plaintiff replied, denying the allegations, and upon the issues thus tendered the case was submitted to a jury upon the evidence adduced and the instructions of the court.

The appellants make seven contentions for reversal, the last being that the verdict was against the evidence. This we shall first consider. The testimony of the appellants was to the effect that there was insufficient janitor service, that the offices were poorly kept and were suffered to become and remain unclean; that they failed to receive the necessary heat, and there was trouble in entering and leaving their offices because of poor elevator service; that the plumbing was bad and the general conditions so unsatisfactory that they were compelled to abandon their offices and move into a new building; that they had complained of the failure of the lessor to comply with her agreements to the superintendent of the building, and some of them testified that they had complained to Mrs. Dugan personally, but that none of these complaints were considered or the defects remedied.

The evidence adduced by the testimony of witnesses for the appellee was in direct conflict with that given by those for the appellants, and was to the effect that all of the services agreed to were performed; that the offices were kept in good condition with the necessary attendants, the plumbing kept in proper condition, the elevator properly maintained and efficiently operated. Both Mrs. Dugan and the superintendent of the building, Mr. King, stated that they had never received any complaint other than was usual or ordinary, and that these they attended to and complied with the requests of the tenants, although inspections disclosed that the causes for these complaints were often brought about by the negligence of the tenants in the use of the offices and their equipment. They also testified that the first they knew of the intention of the tenants to vacate was when they had already left or were in the act of leaving.

The evidence also developed the fact that a new office building was in course of construction during the

time of the occupancy by the tenants of Mrs. Dugan's building. This was known as the ''Medical Arts Building,'' a large and modern structure; that the tenants, before abandoning their leases and before the Medical Arts Building had been completed, had contracted to rent offices therein.

We think there is sufficient evidence to warrant the submission of the defenses pleaded to the jury. It is the sole judge of the credibility of the witnesses and weight and value of their testimony, and its conclusion is binding upon us.

It is also contended by the appellants that the court erred in admitting certain testimony. The specific complaint made is that ''counsel for appellee, on cross-examination of certain witnesses over the protest of the appellants, read to the jury certain portions of the transcript of their former testimony without laying a proper foundation therefor.'' We are not favored with the names of the witnesses or the questions propounded to them relative to their former testimony, but we have examined the record and are unable to see in what particular appellants could have been prejudiced. Complaint is also made of the action of the court in permitting appellee's counsel to interrogate appellants ''concerning a lease which was not material or competent to any of the issues involved in this case and was injected into the case for the sole purpose of prejudicing the jury.'' We presume that counsel refer to the testimony elicited from the appellants on cross-examination to the effect that, while they were still occupants of the Dugan building and before they had given notice of an intention to abandon same, they had signed leases for offices in the new building which was being erected. We think this testimony pertinent to the issue and competent as tending to show a motive for the abandonment of their leases other than that alleged in their answer.

An amendment had been filed to the answer of the defendants (appellants) on a certain Saturday morning. It was shown that they had met in the office of one of them, and on cross-examination they were asked as to

whether or not they had talked over the case and discussed their respective defenses. This was over their objection. In the closing argument of one of the attorneys he was permitted to say: "I say they (the doctors) had a meeting last Friday night to discuss this case, and I suspect at that meeting the subject of additional claim was discussed and formulated, because on Saturday morning the amended answer was filed. That was alleged, and it was not done before Friday. You can draw your own conclusion. I am drawing mine. I do say that it came out Saturday morning that they made additional claim." The appellants objected to this argument and here urge the same as reversible error. It will be observed that the attorney merely argued the meeting of the doctors on Friday night as a circumstance tending to show that the grounds set up in the amended answer were an afterthought, as the case had been once fully tried without these grounds of the answer having been mentioned. He said to the jury, "You can draw your own conclusion. I am drawing mine." It is our opinion that no prejudice could have resulted from this argument.

In the motion for a new trial it was urged that the verdict, which purported to be a unanimous one, was not such in fact. Jurors were called and testified to the effect that the verdict as returned, correctly reflected the action of the jury.

An attorney at the hearing on the motion for a new trial offered to testify as to statements made by jurors to him tending to contradict their testimony. The court refused to hear or consider the offered testimony, and this action of the court is assigned by defendants as error.

When the verdict was announced, either party might have required the jury to be polled (§ 1299, Crawford & Moses' Digest), and when this has not been done, the jury's verdict becomes final. Section 1300, Crawford & Moses' Digest. Therefore, if any error was committed, it was one of which defendants can not complain.

There were two instructions numbered "7" given by the court, one at the request of the appellee, and one on

its own motion at the conclusion of the argument of one
of the attorneys for the appellants. In the testimony
of Dr. Deadrick, he complained of the refusal to permit
him to use the passenger elevator for the purpose of
taking a safe down to be sent out to be repaired. The
court, by instruction No. 7 given on its own motion, ex-
cluded that testimony from the jury in the following lan-
guage: "I want to eliminate that complaint from the
consideration of the jury. That is just one isolated in-
stance, and does not apply to the other defendants; and,
so far as Dr. Deadrick himself is concerned, that par-
ticular complaint will not be considered by you. It
would not be enough to warrant him in abandoning his
lease, so you will eliminate that from your consideration
of the case." It was shown by the doctor's own testi-
mony that the rule of the building, which was posted at
the elevator, was: "This elevator is to be used for
passengers only from 8:00 a. m. until 7 p. m.," and
the time that he desired the safe to be removed was
about the middle of the morning which was ordinarily
a time when passengers were most frequently using it.
It was not attempted to be shown that the rule relating
to the use of the elevator was unreasonable or unneces-
sary. The court therefore properly excluded this com-
plaint from the jury.

At the request of the appellee the other instruction
numbered "7" was given, which is as follows: "You
are instructed that, in considering your verdict, you shall
consider the evidence and instructions as applicable to
each of the defendants, irrespective of whether you find
against or for any other defendant or defendants." The
contention is that this instruction is improper and prej-
udicial. Counsel for appellants has not pointed out in
what particular prejudice might have resulted, and we
are unable to see how any could have. There were four-
teen defendants, and the court merely, and very prop-
erly, by this instruction, informed the jury that the
evidence and instructions applicable to each should be
considered by it in determining what its verdict should
be as to any one of them. This, we think, is the pur-

port of the instruction, and, if it was inaptly drawn, specific objection should have been made to its language.

It is insisted that the instruction last above quoted is in conflict with the one relating to the testimony of Dr. Deadrick. We see no connection between them, nor any conflict between the two.

Instruction No. 2, given at the request of the appellee, placed the burden upon the appellants to establish their defense by preponderance of the evidence. It is urged that this is error, the contention of the appellants being that the burden was upon the lessor to establish affirmatively the fact that the defenses pleaded were unfounded. This contention is based upon an allegation of the complaint "that plaintiff has performed each and every agreement and covenant stipulated in said lease to be kept and performed." The contention of the appellants in this particular is unsound. The stipulation of counsel heretofore noted was offered in evidence by the appellee together with the lease, and she thereupon rested her case. The appellants assumed the burden of establishing their defense and contended that the burden of proof in the whole case would be on them, which would entitle them to the opening and closing of the argument. The court, answering this contention, said: "We will determine that later." Whereupon, to sustian their several defenses, evidence was adduced by the defendants. In further recognition that the burden rested upon them, defendants requested the court to give an instruction which, in part, is as follows: "You are instructed that if you believe from a preponderance of the evidence during the period of said leases the plaintiff breached the same by failure to comply with the provisions of said leases incumbent upon her in furnishing the defendants with necessary heat, light, gas, water and elevator and janitor service * * *, the defendants had the legal right to abandon the rooms embraced in said leases and to vacate same." This instruction was not given by the court because it was covered by other instructions given. No complaint is made as to the refusal of the court to give this instruction, but we

call attention to it simply for the purpose of showing that at all times the defendants voluntarily assumed the burden of proving the affirmative defenses offered by them. This being the case, there was no error committed by the court in instruction No. 2, placing the burden upon the appellants. Complaint was made of instruction No. 5 on the same ground as made to instruction No. 2.

Appellants requested instruction No. 11a which the court refused and which action of the court is assigned as error. That instruction in effect declared the law to be that a leasehold interest might be terminated by the mutual assent of the tenant and landlord, either express or implied, and the jury was told that, if it should find "from the evidence in this case that the defendants, or any of them, abandoned the rooms occupied by them under a written lease with the plaintiff before the expiration of the term of said lease and that by her actions the plaintiff took possession of any of the rooms abandoned by any of the defendants for her own benefit and to the exclusion of the defendants, or any of them, then it will be your duty to find that there has been a surrender of such premises, although there was no express agreement to that effect between the parties." This instruction was abstract, the evidence relied on by appellants to support it being entirely insufficient. This evidence goes no further than to show that the signs were removed from the windows of one of the appellants after he had vacated his rooms; that another gave the key to his offices to the manager a while after he had left, and after this he noticed that there were no lights in the office and all the doors were open; that the offices of Dr. Deadrick were rented to another party sometime after he moved, without his consent; and another one of the appellants testified that lights were removed from his offices after he had moved from the building and that he did not know who had removed them. None of this evidence is sufficient to show any assent by the lessor to the action of the lessees in vacating the premises. The evidence is undisputed that the lessor was advised by the conduct of the lessees that they had no thought other

than to absolutely and permanently vacate the premises, and it is clear that the renting of Dr. Deadrick's rooms was for his account. This is shown by the efforts made to get Dr. Deadrick to consent to the renting.

In the case of *Hays* v. *Goldman,* 71 Ark. 251, 72 S. W. 563, cited and relied upon by the appellants, the lessee of a store building was holding under a lease for a period of nine months, terminating on December 30, 1899. The lease gave the lessee the option to continue the same for a period of one year at the same rental. On the day of the expiration of the lease, the lessee served written notice upon the agent of the lessor that he would not continue the lease through the year 1900, but would like to retain it for the month of January. This notice was delivered to a clerk in the agent's office who read it and remarked, "That is all right." Without taking further steps to notify the agent, the lessee remained in the store and paid the rent for January in advance. Learning that the agent considered that he had elected to keep the property under his contract for another year, he protested against this view, and declared his intention of holding only during the month of January. At the end of that month he moved out and returned the keys to the agent. The owner, during the month of January learning that the lessee intended to abandon the store, rented it to another for the remainder of the year at a monthly rental fifteen dollars per month less than he had been receiving and afterward brought suit to recover this difference from the lessee. To this suit the lessee answered that plaintiff consented that he might occupy the premises during the month of January and quit at the end of that time, and also that at the end of that month he had surrendered possession of the store to plaintiff's agent, which surrender had been accepted by said agent. This court held that the circumstances entitled the lessee to have these defenses submitted to the jury and stated the law to be that "if the landlord takes charge of the property after the tenant has abandoned it merely to protect it from injury, or if, knowing that the tenant does not intend to return,

he rents it for the account of the tenant, these acts may not show assent on his part, but if after an abandonment he takes possession and rents the premises on his own account, this is conclusive evidence of a surrender." The circumstances of the instant case fall far short of those in the case cited and did not create evidence of a substantial nature to warrant the giving of the instruction above referred to.

Instructions Nos. 3 and 4 requested by the appellants and refused by the court are not abstracted, but from the argument made we judge that they in effect would have told the jury that it was the duty of the lessor, on abandonment by the lessee of the premises, to use a reasonable effort to let the premises to others to thus minimize the damage. The court properly declined to so instruct the jury. The general rule is stated in 16 R. C. L. 969, § 481, as follows: "If the tenant wrongfully abandons the possession of the demised premises, the landlord may re-enter and determine the contract of lease and in so entering is not guilty of a trespass. On the other hand, it is well settled that a tenant cannot by an abandonment of possession before the expiration of the term for which he has agreed to pay rent affect his liability for the subsequently accruing rents; in such a case the landlord may let the premises lie idle and recover rent for the whole term. In such a case, according to the better view, the landlord is under no obligation to attempt to relet the premises on account of the tenant; the latter cannot by his own wrong in abandoning the premises impose this duty upon the landlord." The rule announced is supported by the weight of authority and approved by this court in the cases of *Meyer* v. *Smith*, 33 Ark. 627, and *Grayson* v. *Mixon*, 176 Ark. 1123, 5 S. W. (2d) 312.

We find no prejudicial error in the rulings of the court as to any of the particulars presented by the appellants, and, as there is substantial evidence to support the verdict of the jury, the judgment is affirmed.