BALDWIN *v.* WINGFIELD.

4-3897

Opinion delivered June 17, 1935.

</div>

R. E. Wiley, Henry Donham and Wm. P. Bowen, for appellants.

J. H. Lookadoo and Lyle Brown, for appellee.

MEHAFFY, J. This suit was begun by appellee in the Clark Circuit Court to recover damages for injuries to her eye. She alleges that she boarded the train at Little Rock on February 17, 1934, after purchasing a ticket to Arkadelphia. She went to the window before the train started, to call to her husband, and noticed that the glass in the window was cracked clear across. It was alleged that somewhere near Benton, while she was sitting near a window in the train, the glass in the window by which she was sitting broke and part of the glass struck her in the left eye. She alleged that the appellants knew, or should have known, the unsafe condition of the window. Her eye was permanently injured, and she prayed judgment against appellant in the sum of $3,000.

Appellants filed motion to require appellee to make her complaint more definite and certain, in that she failed to allege in what respect the window was in an unsafe condition. In response to this motion, appellee filed an amendment alleging that the negligence complained of was that the glass in the window was broken, and had been broken for some time; that it was not properly fastened in the frame of the window, and that the train was operated in such a manner that there was a sudden jerk which shattered the glass in the window, and that particles of the glass struck her in the eye.

Appellants filed answer, denying the allegations of the complaint and alleging that, if appellee was injured, her injuries were due to some person, unknown to appellants, throwing a rock through one of the windows of the coach in which appellee was riding, and that, if appellee sustained any injuries, they were the result of an unavoidable accident.

Appellee testified that she lived at Arkadelphia; was 36 years old, washed, ironed and cooked for a living; on February 17, 1934, she sustained the injury; glass fell out of the window and struck something and fell over her; bought a ticket at the Union Station at Little Rock to ride the Missouri Pacific train to Arkadelphia; got on the train, took a seat, and between Little Rock and Benton the glass fell out of the window; it was cracked clear across; she knew this before she left Little Rock; her

husband went down the steps to help bring her luggage, and she had left her umbrella in the station; went to the window to wave to him to bring her umbrella. The train gave a sudden lurch, and she thinks that is what shook the glass out of it; and some of it got in her eye; her eye has been giving her considerable trouble ever since; it never bothered her before, and she never used glasses before; now she cannot go without them; before the injury she was getting $3 and $3.50 a week for ironing alone, but has been unable to do anything since the accident.

On cross-examination she testified that she was riding on the right-hand side of the coach coming to Arkadelphia and the window that was broken was on the opposite side of the aisle from her, not directly opposite, but was the next window back of her. The glass was cracked clear across. They say there was a rock found after the accident, that landed on Tansie's coat; she saw the rock after the conductor took it and stood in the aisle and said: "Here is what did it." Most of the top part of the window was broken, the upper part fell out; it shattered and got in her eye while she was sitting clear across the aisle from it. There were not many people in the car; Dr. Ross and Dr. King treated her eye; the rock that they showed her was about the size of her fist; the train gave a sudden jerk before it fell out she thinks that is what shook it out; the train stopped after the accident, but was not a station stop; it stopped because of all the excitement going on. This was all of the appellee's testimony.

Tansie Williams testified for the appellant that she remembered getting on the train at Cypress Junction one night in February when Bettie Sue Wingfield was on the train; she knows her; on that trip between Cypress Junction and Malvern a rock was thrown through the train; witness and appellee were both in the colored car; she was not in the coach when the rock was thrown through, but was in the lavatory; saw the window after it was broken, but paid no attention to it before; the rock was found in her husband's pocket; his coat was on the back of the seat that appellee was sitting in; she was com-

ing out of the lavatory when they found the rock; did not pay any attention to the window if it was broken.

Theoplis Williams testified that he was on the train in the back end of the colored part of the coach, and when the rock came through he heard it crash; it sounded like a gun or something; the rock knocked a little hole in the window; saw the rock after it was all over; saw the window after it came through; paid no attention to the window before, but did not notice anything wrong with it; was working for the railroad at the time; saw the hole and saw the shattered glass.

Tansie Williams, recalled, testified that she saw the broken glass on appellee and helped clean it off.

John Williams testified that he was on the train riding behind appellee; saw the rock after they found it and heard the crash as it came through the window; does not know who found the rock, but it was found either in his overcoat or in his wife's coat; when the coat was picked up the rock dropped out; the rock did not seem to shatter it much, just knocked a hole through the window; if there was anything wrong with the window before, he did not notice it; did not see any crack in the window; there was no unusual jerk of the train at the time the rock was thrown; everybody seemed to think it was a shot when the rock came through; it just broke a little round hole through the window about the size of the rock and shattered it a little.

M. C. Wilbanks testified that he worked for the railroad company and was gang foreman; was on the train when the rock was thrown through the window of the colored coach; he was riding in the smoker right behind the colored car and heard the commotion; the train was just south of Benton at the time; does not remember whether the train slowed down or not; heard a racket in the colored car, went in there, and found a hole through the window; some man found a rock in a seat in some man's coat; turned the rock over to the conductor; the window had a hole in it about the size of a saucer; it went through the glass somewhere near the middle of the window; does not remember where the train stopped after that, but they did not try to find who threw the rock; the

train was not stopped at all; did not remember any unusual jerk of the train.

A. J. Spear, conductor on the train, testified that it was said a rock was thrown through the window of the colored coach; went into the colored coach and made an investigation; was in the rear car when he first learned of the commotion in the colored car; a man came back and said that somebody had thrown a rock through there; examined the window and found the center part was broken, a place about the size of a saucer; did not notice anything wrong with the window besides a hole through it; none of the glass was broken out where it fastened to the frame; the rock was afterwards found; thinks it was taken out of a pocket; was turned over to witness and he turned it over to the special agent; did not notice any unusual movement of the train; if the window was cracked when it left Little Rock, he knew nothing about it; the train was inspected at Little Rock, Poplar Bluff and Texarkana; after the accident witness made inquiry, and nobody complained of being hurt; did not stop the train.

W. D. Traylor, porter on the train, testified that he did not remember any unusual jerk; observed the window in the coach where it was said a rock was thrown through; there was a hole in the window about the size of a hen egg; does not remember what part of the window the hole was in; does not remember seeing anything wrong with the window when it left Little Rock, but did not particularly make any observation.

The engineer on the train, J. L. Fisk, testified that he did not remember any sudden jerk or lurch of the train; remembers that it was reported to him that a rock had been thrown through the window.

J. H. Sheppard, city marshal of Gurdon, a passenger on the train, testified that he was in the colored coach with a colored prisoner; heard the commotion and went to investigate and found that there was a hole through the window; saw the rock that they said they found in the coach; there was nothing wrong with the window except the hole in it; did not notice any unusual lurches or jerks.

A. J. Goolsby, car inspector at Texarkana, inspected the car when it came into Texarkana, and his record shows that there was a glass broken on the left side; did not notice any defect in the window frame.

J. C. McCabe testified that he lives in Little Rock and works for the railroad company and is passenger car foreman; inspected train No. 3 on February 16th; the inspection was done under his supervision, and he made a record; did not observe any crack in the window; if he had found anything of that sort, he would have made a note of it; had with him a window of the type that was in the car.

There was a verdict and judgment for appellee for $250, and the case is here on appeal.

The appellants first contend that the court erred in refusing to give their instruction directing a verdict for them.

It will be observed that there is no testimony in the case for appellee except her own testimony, which is to the effect that the window was broken before it left Little Rock, and that a sudden lurch of the train caused it to shatter and caused some of the particles to go into her eye. No one contradicts the evidence of appellee that the window was broken when it left Little Rock, except the inspector testifies that it was inspected under his supervision, and, if there had been anything wrong with it, he would have made a note of it. While it was inspected under his supervision, the person who made the inspection did not testify. The inspector did not claim that he did it personally.

This court does not pass on the credibility of witnesses nor the weight to be given to their testimony. When the jury has returned a verdict and the trial court has refused to set it aside, this court cannot interfere if there is any substantial evidence to support the verdict.

In the instant case the appellee swears positively that the window was broken when the train left Little Rock. Several witnesses testify that if it was broken they did not notice it; but if they had testified that it was not broken, this would still have been a question for the jury, and this court could not interfere with its verdict.

. This court has said: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physically impossible that appellee was injured as a result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner." *Mo. & N. A. Ry. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478.

It may be that it is improbable that the injury occurred in the instant case as stated by the appellee, but it is not physically impossible.

In determining whether there was sufficient evidence to submit the cause to the jury, we look at the evidence of the appellee alone. It is true the appellant's witnesses testified about a rock being thrown through the window. There is no direct evidence that any one threw a rock through the window, and there is no evidence as to who found the rock. The only evidence is that witnesses say that some one found a rock in the pocket of a coat lying on the seat by appellee. Numbers of witnesses testified that they heard the crash, and some of them said it sounded like a shot; but all these witnesses were present in the trial court, the jury and trial judge heard them testify, observed their demeanor on the witness stand, and had an opportunity, that we do not have to weigh their evidence and pass on their credibility.

"The fact that the appellate court would have reached a different conclusion had the judges thereof sat on the jury, or that they are of the opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence." 4 C. J. 859, 860.

"The verdict of a jury cannot properly be disturbed on appeal merely because of its appearing to be against the clear weight of the evidence, or because, if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did. If the verdict has any credible evidence to support it, any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations, it is proof against

attack on appeal, and that must be applied so strictly, on account of the superior advantages of court and jury for weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record." *Barlow* v. *Foster,* 149 Wis. 613, 136 N. W. 822.

"Under our system of jurisprudence it is the province of the jury to pass upon the facts. It is not only their privilege, but their right, to judge of the sufficiency of the evidence introduced, to establish any one or more facts in the case on trial. The credibility of the witnesses, the strength of their testimony, its tendency, and the proper weight to be given it, are matters peculiarly within their province. The law has constituted them the proper tribunal for the determination of such questions. To take from them this right is but usurping a power not given. * * * When there is a total defect of evidence as to any essential fact, or a spark, a 'scintilla,' as it is termed, the case should be withdrawn from the consideration of the jury." *Cunningham* v. *Union Pac. Ry. Co.,* 4 Utah 206, 7 Pac. 795; *Equitable Life Assurance Society* v. *Felton,* 189 Ark. 318, 71 S. W. (2d) 1049; *Healey & Roth* v. *Balmat,* 189 Ark. 442, 74 S. W. (2d) 242; *Brown* v. *Dugan,* 189 Ark. 551, 74 S. W. (2d) 640; *C. R. I. & P. Ry. Co.* v. *Britt,* 189 Ark. 571, 74 S. W. (2d) 398.

There are many other decisions of this court to the same effect. The settled rule is that, if there is any substantial evidence to support the verdict of a jury, this court cannot disturb it, although we might think that it was clearly against the preponderance of the evidence, and, if we had to decide the facts, would decide differently. While the evidence is unsatisfactory, yet we cannot say that there was no substantial evidence to support the verdict.

Appellant next contends that instruction No. 1 given by the court as requested by appellee is erroneous. The specific objection made to the instruction is "that there

is no proof to establish that the broken condition of the window, as testified by plaintiff, caused it to fall out—no testimony to that effect, and it is merely a guess.''

We do not agree with appellants in this contention. If the evidence of the appellee is true, and the jury had a right to believe it, the window was broken before the train left Little Rock; and, if there was a lurch of the train which shattered the glass and threw some of the glass on appellee, this is not merely a guess. At any rate, this was one of the questions submitted to the jury, and its finding is conclusive.

It is next contended that the court erred in giving appellee's requested instruction No. 2. The specific objection to that instruction is: ''That the undisputed testimony shows that the glass was caused to shatter by a rock being thrown through the window.'' This is not the undisputed testimony. The appellee testifies that the lurch of the train caused the window to shatter, and no one testifies to the contrary. To be sure, the testimony of appellants' witnesses shows that there was a crash, and that the window was shattered, and they found a rock in the car. This is the evidence with reference to the rock being thrown. The witness who found the rock did not testify, and no one saw the rock thrown through the window. This was also a question for the jury, and its finding is conclusive.

It is next contended by the appellants that the court erred in giving appellee's requested instruction No. 3. The only objection to this instruction is that it is abstract. It defined ''negligence,'' and this was a proper instruction to the jury. The appellants were charged with negligence, and it was proper to tell the jury what constituted negligence.

Appellants requested a number of instructions which were given by the court. Its instruction No. 2, after stating what the appellee claimed in her complaint, is as follows: ''You are instructed that the burden of proof is upon the plaintiff in this case to prove, not only that she sustained an injury, but that the defendants were negligent in the manner complained of by her, and that such negligence was the proximate cause of the injuries which

she sustained, and she is required to prove this by a greater weight of the evidence. If she had failed to make such proof by a greater weight of the evidence, then your verdict should be for the defendants.''

Other instructions were given at the request of the appellants defining the duties the appellants owed the passengers, and we find no error in the court's instructions.

The court having properly instructed the jury, and there being some substantial evidence to support the verdict, the judgment is affirmed.

SMITH, J., (dissenting). I quote from the transcript verbatim the entire testimony of the plaintiff explaining the manner and cause of her injury. She testified as follows: ''Well, the glass fell out the window. It struck something and fell all over me. That's all I know, it happened so quick. The glass was cracked clear across. I knew that before we left Little Rock, because I got on the train and my husband came down the steps to help bring my baggage down, and I left my umbrella in the station, and I put my baggage on the left-hand side and went to the window to wave at my husband to bring my umbrella, and the window glass was cracked clear across. When the window fell out, it (the train) just gave a sudden jerk. Really, I think that's what shook the glass out of it. Some of it (the glass) got in my eye. I made the remark—I didn't know what it was—I says 'I got a cinder or glass, one, in my eye,' and I caught my eye like that.'' Other testimony of the witness related to the extent of the injury and the suffering it had occasioned.

On her cross-examination the witness stated that the broken window was on the opposite side of the car, across the aisle and one seat to her rear. She did not state that she was riding backward. Her own testimony and that of all the other witnesses makes the fact certain that she was facing the direction in which the train was moving. No explanation was offered by her as to how, under these circumstances, glass which fell to the rear of her and across the car from her could reach her eye. One is reminded of the Irishman who said his enemy was a

coward, who would not have dared hit him in the belly, if his back had not been turned.

When the rock was found appellee heard the conductor say: "Here's what did it." She did not then say nor did any one else suggest that the train had stopped or started suddenly or that there was a "jerk" of any kind which might have broken the window. She further testified as to the cause of her injury, on her cross-examination, that most of the top part of the window was broken. "It fell out or something, the upper part of it did. The window was cracked kinder cater-cornered like, but didn't go clear down to the corner. I don't know what it (the glass) hit when it fell, just hit on the face of the window or something. The rock which they showed me was about the size of my fist. The train made a jerk before the window fell out. That's what shook it out I think. Just a sudden jerk at the time of the accident. It was not at a station. I don't know how far the train run before it stopped. It stopped because of all that excitement was going on, I guess." No other testimony relating to the manner of the injury was offered by appellee or in her behalf.

Ten witnesses were called on behalf of the defendant. Some—but not all of these—were employees of the railroad company.

It is made as certain as any fact can be made by human testimony that some miscreant threw a rock into the moving train, which knocked a hole in the window glass. There was a loud report which everyone heard. Some thought a pistol had been fired, and there was great commotion and excitement. Passengers came from the rear of the car in which appellee was riding, used as a smoker. No one suggested there had been any sudden stop or jerk. Had there been, under the circumstances some one would have heard or felt it, and have remembered it. But all the witnesses for defendant testified that there was "no jerk" or other violent or unusual motion of the train. There was an inner and an outer sash to the window, one was up and the other was down, and the witnesses, including appellee herself, testified that only the upper portion of the sash was broken, and

a number of the witnesses who examined it testified that there was a hole in the top of the sash which some of the witnesses testified was as large as their fist, others said it was as large as a saucer. Some of the flying glass was knocked across the car. Two passengers, a section-hand and his wife, had their wraps on a seat back of the one in which appellee sat, but were not occupying that seat at the time the window was broken. An indentation in the wall opposite the window was found, and a rock was also found in this seat. One witness said it was in a pocket of an overcoat which was lying on the back of the seat. It is not certain just where the rock was found. The most definite information on this subject was elicited in the cross-examination of appellee by counsel for appellant. He asked appellee this question: "Q. It landed in Tansie's coat, didn't it?", and she answered: "That's what they say."

The owner of the coat was asked about finding the rock, and he testified as follows: "I don't know who found the rock, but anyway I had an overcoat lying on the seat, and my wife had a coat lying on the seat, and the rock was found in one of the coats. When the coat was picked up the rock dropped out." It is not even intimated by the learned and astute counsel for appellee that the rock had previously been in the pocket of the witness, who was a friend of appellee, and no one denies that the rock was thrown into the car.

It is not insisted that the railroad company would be liable if appellee's injury was caused by some one throwing a rock into the car. It does not appear to me to be consonant with the physical facts that appellee was injured in any other manner. It is chimerical to believe there is any other conclusion. Appellee was not recalled to deny, and no witness denied, any of the testimony about the loud crashing noise, which sounded like a pistol; about the circular hole in the window; the indentation in the wall of the car, and the finding of the rock in the seat opposite the window, all of which facts were observed and were commented upon at the time by the various witnesses who testified in the case. These facts are undisputed, and it appears arbitrary to me to dis-

regard the only reasonable inference that may be deduced from them.

In my opinion the judgment should be reversed, and the cause dismissed.

I am authorized to say that Justices McHaney and Baker concur in the views here expressed.