MID-CONTINENT LIFE INSURANCE COMPANY v. HILL.

4-4299

Opinion delivered May 4, 1936.

*Rittenhouse, Webster & Rittenhouse* and *Hays & Smallwood,* for appellant.

*Neal King,* for appellee.

MEHAFFY, J.  On May 14, 1925, the Mid-Continent Life Insurance Company issued and delivered to James Franklin Hill its life insurance policy, insuring his life in the sum of $2,500 with double indemnity in case of accidental death.  The policy was placed in the Bank of Atkins, Atkins, Arkansas, by Hill and remained there until his death.  None of his family ever saw the policy, and knew nothing of its provisions.  All premiums were paid, including the double indemnity premium, and the policy was in full force and effect at the time of Hill's death.

On March 12, 1935, the body of Hill was discovered in the back waters of an overflow near his home.  The feet were lying on the edge of the levee and only the toes showing.  The body was flat on its back down in the water two or three feet deep.  His gun was found leaning against a bush on the levee.  The body was lying between two bushes in the water, and his left hand was grasping one of the bushes.

On the same day that Hill's body was found, March 12, 1935, the Bank of Atkins, which had the policy in its possession, notified the insurance company at Oklahoma City of the finding of the body.  The following is the letter written by the bank: "Gentlemen: The body of James F. Hill, insured under your policy No. 48,198, was found drowned this morning in a canal or bayou about seven to eight miles east of here.  Some people think it was an accident, others that he died of some heart disease.  We hold this policy in question for safekeeping, and it has been with us ever since it was issued, so please forward us proper blanks for the claimant, his wife, to execute * * *."

This notice was received by the insurance company in Oklahoma City on March 13, 1935, the day after Hill's body was found.  The company, on March 14, 1935, issued its check dated at Oklahoma City for the sum of $2,175.07.  This was the face of the policy less Hill's indebtedness to the company for borrowed money.  Mr.

R. H. Amrein came to Atkins with the check on March 15. The policy was secured from the bank and the check delivered to Mrs. Hill, the beneficiary, on March 15, and Mrs. Hill signed the following receipt: "Received of the Mid-Continent Life Insurance Company of Oklahoma City, Oklahoma, the sum of two thousand one hundred seventy-five and 07/100 dollars, in full payment and satisfaction of all claims whatsoever under the above policy.

"In consideration of which payment we hereby forever release the said company from all liability to us, our heirs or assigns under said policy.

"Witness our hands and seals at Atkins, Arkansas, this 15th day of March, 1935.

"Willie F. Hill.

"Signed in the presence of:
"D. L. Barker,
"R. H. Amrein, Witness."

On July 13, 1935, appellee filed suit in the circuit court of Pope county, Arkansas, under the double indemnity clause of the policy for $2,500, attorney's fees, and 12 per cent. damages.

The appellant filed answer denying the material allegations of the complaint, and specifically denied that Hill died from external, violent and accidental means, and alleged that he died a natural death, and that appellant had, on March 15, 1935, paid the beneficiary the full amount of the policy less indebtedness, and that as a part and parcel of the same transaction, the appellee executed and delivered to the appellant the receipt above set out. It also alleged that no proof of death, as required by the policy, was made by the appellee.

There was a trial, and at the close of the evidence each party asked for an instructed verdict. The court rendered a verdict in favor of the appellee for $2,500 with 12 per cent. penalty and $250 as attorney's fees. This appeal is prosecuted to reverse the judgment.

The evidence on the part of the appellee shows that J. F. Hill, on the morning of March 12, 1935, after he had eaten his breakfast, took his gun and told his wife he was going to see about the back water. His body was

found the same day and his gun was found resting against the small tree near by. The body was found in the canal, and when taken out, water ran out of Hill's mouth, about a half gallon of muddy water ran out of his mouth and nose. The body was found among some bushes in the water, and Hill had hold of one of the bushes with one hand. After the witness who discovered him ran his hand over Hill's bosom, more water ran out of his mouth and nose. When the body was found the head was about three or four inches under water. On the same day the appellant was notified in Oklahoma City, Oklahoma, that the body was found drowned. The letter also stated that some people thought it was an accident, and others thought that he died of some heart disease. All the witnesses who saw the body at the time it was taken out of the water testified that a large quantity of water ran out of his mouth and nose.

Mrs. Hill and her daughter, Mrs. Alexander, and others who knew Hill intimately testified that he did not have heart trouble, and that he had never complained of heart trouble. .

Immediately on receiving information that Hill was drowned and that some people thought it was an accident, the insurance company, with this information, made a check for the $2,500 less indebtedness, the check being dated on March 14, the day after the company received the letter. The company sent its adjuster with the check to Atkins, Arkansas. The policy was secured from the bank, the check delivered to Mrs. Hill, and she signed the release above set out and indorsed the check. Neither Mrs. Hill nor any other member of the family had ever had possession of the policy, and none of them knew that the policy contained the double indemnity clause. According to the witnesses of appellee, appellee was not advised that the policy contained the double indemnity clause.

The appellant contends for a reversal first, because it says it settled with the appellee, and that she signed a release containing the following statement: "In consideration of which payment we hereby release the said company from all liability to us, our heirs or assigns

under said policy." It is contended that this is a settlement, and in the absence of fraud is as incapable of rescission as any other contract. It is argued that the appellee does not allege in her complaint that the appellant company was guilty of any artifice, misrepresentation or fraud inducing the settlement and execution of the release, and that none is shown in the evidence. The evidence, however, does show that the appellant sent its agent with a check immediately on receiving information that Hill had been drowned, and it, of course, knew all about the indemnity clause, but it made a check for the amount due, or that would have been due, if his death had not been accidental. It knew all the facts; knew that Hill had been drowned; knew about the double indemnity clause. The appellee had never had possession of the policy, knew nothing about the double indemnity clause, and according to her testimony, she was not advised of this.

"Fraud consists of some deceitful practice or willful device resorted to with intent to deprive another of his right or in some manner do him an injury." Black's Law Dictionary, 521.

"The settlement was obtained by taking the beneficiary by surprise and requiring her to act at once without having the policy in her possession, or learning its provisions and without an opportunity to take legal advice or ascertain the facts." *National Life and Accident Ins. Co.* v. *Threlkeld,* 189 Ark. 165, 70 S. W. (2d) 851; *Order of United Commercial Travelers of America* v. *McAdam,* 125 Fed. 358, 61 C. C. A. 22.

In the instant case the representative of appellant came with the check only three days after Hill's death, knowing that the policy was not in the possession of appellee, and according to appellee's witnesses, was in a hurry to settle the matter, so that appellee had no opportunity to learn the facts, and her physical and mental condition at the time was such that she was unfit to make any investigation.

If the testimony of the witnesses for appellee is to be believed, the appellant, with the knowledge of the double indemnity clause and with the knowledge that

Hill was drowned, went to Atkins, saw Mrs. Hill, concealed from her the fact that the policy contained the double indemnity clause, gave her the check, and secured the release.

Appellant cites a great many authorities to the effect that an agreement fully performed has all the properties of a contract, and in the absence of fraud, is binding on the parties. One of the cases cited and quoted from at length states: "It is unimportant that there was a mutual mistake as to the extent of the injuries, unless the plaintiff relied and had the right to rely upon the superior knowledge of the other contracting party as to the extent of the injury. There is no such element in this case." *Kansas City Southern Ry. Co.* v. *Armstrong,* 115 Ark. 123, 171 S. W. 123.

The contract which is the basis of the present suit was not only not considered when the release was given, but the appellee had no knowledge of its existence, and according to her testimony, this act was concealed by the appellant. A contract entered into by parties capable of making contracts is binding on the parties. But here there was no contract or agreement settling the claim under the double indemnity clause, and no reference was made to that clause. Knowing that this contract existed, and that the appellee did not know it, it was the duty of the appellant to advise the appellee of its existence, and simply inserting in the release that it was a release from all liability under the policy would not protect it from a claim that was not settled. If the evidence on the part of the appellee is believed, and the court had a right to believe it, there was no settlement of the claim now in suit.

It is next contended by the appellant that the evidence is wholly insufficient to establish that the death of the insured, J. F. Hill, was caused directly, independently and exclusively of any and all other causes from bodily injuries, effected solely through external, violent and purely accidental means. The evidence, we think, clearly established that Hill was drowned. Unquestionably, from the facts in this case his death was neither murder nor suicide. Herzog on Medical Jurisprudence,

page 227, states: "One of the most constant signs in drowning is frothing at the mouth.

"Another sign which proves drowning is the grasping in the hands of weeds or some of the ground from the bottom of the sea, lake or river."

There were no wounds on the body; nothing to indicate either murder or suicide; but the appellant contends that he had a heart attack. There is no evidence that he had a heart attack, and in fact, no evidence that he had heart trouble, except that a physician stated that Hill had told him some time before the accident that he had heart trouble. This is contradicted, however, by practically all the witnesses that knew him intimately, and there is not a scintilla of evidence indicating that he had a heart attack causing him to fall into the canal.

In Wharton & Stilles Medical Jurisprudence, volume 3, page 349 *et seq.*, it is stated: "The post mortem appearances of the exterior of the body of a drowned person are usually very characteristic. The skin is usually pale, cold and damp. The paleness at times is marked, and often in the early stages is associated with reddened areas of cadaveric discoloration. * * * The appearance of foam at the nostrils has been considered of marked value in the diagnosis of drowning * * *. The condition of the lungs is very significant. Immediately after removal from the water, water may be poured out of the lungs by lowering the head of the victim and compressing the chest. * * * A small quantity of water may enter the lungs when the body is submerged post mortem, but the alveoli will not be so completely filled as in the cases of drowning. The presence of water in the stomach is of even more significance than the presence of water in the lungs."

In the instant case a large quantity of water came from the mouth and nostrils, which could not have happened if he had not been drowned. The water was muddy, and Hill's hand was grasping a bush. In fact, all indications are that he was drowned, and we think the evidence is ample to justify the court in finding that the drowning was accidental.

In jury trials, the jury is the judge of the credibility of the witnesses and the weight to be given to their testimony. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S. W. (2) 689.

In this case each party requested a peremptory instruction, and no other instruction. They, therefore, submitted to the judge the questions of fact, and his finding is as binding on this court on questions of fact, as the verdict of a jury. *Inter-Ocean Casualty Co.* v. *Copeland,* 184 Ark. 648, 43 S. W. (2d) 65; *Coral Gables* v. *Marks,* 191 Ark. 467, 86 S. W. (2d) 911; *Rawls* v. *Free,* 184 Ark. 737, 43 S. W. (2d) 540; *Stone* v. *Bowling,* 191 Ark. 671, 87 S. W. (2d) 49.

We think there was ample evidence to sustain the court's finding, not only that Hill was drowned, but that his death was caused directly, independently and exclusively of other causes from bodily injuries, effected solely through external, violent and purely accidental means.

It is contended also that there was no proof that deceased came to his death through accidental means. Appellant received information immediately that Hill was drowned, and that some persons thought it was accidental. It did not require any additional proof, but proceeded to Atkins, settling the death claim without ever discussing the proof of loss or the fact that there was a double indemnity clause.

It is also contended that the court erred in granting appellee judgment for penalty and attorney's fee, and argues that no demand was made, but when the proof of loss was made and signed by appellee, this was a demand for payment of the amount due under the policy, and this proof was accepted by appellant without objection, and payment was made as above indicated.

We think there was substantial evidence to sustain the finding and judgment of the court, and the judgment is, therefore, affirmed.