THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
*v.* SPRINGER.

4-4610

Opinion delivered April 19, 1937.

*Frederick L. Allen, J. Ford Smith* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Ross Mathis* and *W. J. Dungan,* for appellee.

MEHAFFY, J. In 1926, the appellant issued its policy in the amount of $1,000, insuring the life of Tennie A. Springer, and the appellee was designated as beneficiary. The policy contains provisions for payment of twice the face amount in the event the insured should die as a direct result of bodily injury effected solely through external, violent and accidental means.

On November 17, 1935, the insured was injured in an automobile accident and died on February 11, 1936. The appellant paid the face of the policy, $1,000, but refused to pay the double indemnity benefits. Suit was brought to recover the sum of $1,000.

The appellant answered and denied that the insured died as a result of the automobile accident, and it alleged that the double indemnity should not be payable if death results directly or indirectly from disease or bodily infirmity. It alleged that the death of insured was caused by leukemia; that her death was caused directly or indirectly from disease or bodily infirmity.

There was a trial by jury, a verdict for $1,000, together with statutory penalty of 12 per cent., and attorneys' fees of $200. The case is here on appeal.

The evidence shows that the insured was injured in an automobile accident on November 17, 1935. The insured's shoulder was injured, her neck and the back of her head. She was carried to the hospital at Searcy on Sunday and stayed until the following Friday. Prior to deceased's injury she was employed by the Augusta Mercantile Company as a clerk. After the accident she never appeared well, but complained of her shoulder, back, head and neck; had some trouble with one eye. In August, 1935, she had a minor operation at the Baptist Hospital, but recovered from that.

Dr. Dungan testified that the insured, after the automobile accident, had cuts and bruises on the exterior of

her body, and also a dislocated shoulder. The X-ray showed it was a fractured shoulder. She complained of being weak all the time, and could not sit up. She continued to grow weaker and weaker after the injury. She died on February 11, 1936, of acute leukemia. The doctor stated: "It is generally admitted by most doctors that there is a lot of argument about what causes leukemia. One doctor may say one thing and one another. Most of the experimentation has failed to reveal the cause." There is a great deal of speculation on the subject. As to what the cause of leukemia is, is pure speculation. Dr. Dungan also testified that he thought if a person suffered an injury to this bone, an injury to the shoulder, an injury to the back of the head, an injury to the side of the head, he believed this would cause leukemia. He was asked if he did not testify that in the present state of medical science it is speculation, and he answered that it was theory.

Dr. W. T. Wilkins testified: "In my opinion leukemia can be caused by trauma. Trauma is a blow or a bruise. If a man were struck on the arm so that it was seriously injured, there would be an increase in the normal white blood count. This is nature's way of helping to keep down any pus formation. They come from the bone marrow where they are normally manufactured." He testified that he agreed with Dr. Dungan that in the present state of development of the medical profession, or medical science, it was just speculation as to the cause of leukemia. He also testified that in his opinion, based on his practice, training and observation, an injury to the head, neck and shoulder could result in leukemia.

An affidavit of Dr. Holmes was introduced, in which it was stated that he had made a thorough examination, and did not believe that the accident and injuries resulting therefrom caused Mrs. Springer's death.

Dr. S. C. Fulmer testified that in any particular case of leukemia, it would be purely speculation as to the cause. When asked if there was any writing on the subject, he said: "There is." He also testified that the

subject had been before medical men since 1845. He testified that he agreed with Dr. Dungan that the cause of Mrs. Springer's leukemia would be pure speculation. He said that leukemia is a very rare disease, and always proves fatal. Sir William Osler was a very famous doctor, and his books are recognized the world over, and in the book there is this statement: "It has followed a blow." The author does not say that it was caused by a blow, but merely states that it can follow a blow. In this instance the leukemia followed the accident.

Dr. Porter Rogers testified that as to whether Mrs. Springer's injury caused the leukemia would be a matter of speculation.

Dr. Dungan was recalled and testified that Mrs. Springer had acute leukemia, which came on probably ten days before she died. He also testified that if a person suffered an injury, as Mrs. Springer did, he thought it could cause leukemia.

Dr. Wilkins was recalled, and testified that from the observation of the two cases he had had and the reading he had done, his opinion was that leukemia could be caused by trauma.

All of the physicians who testified said that Dr. Osler was one of the most famous doctors that ever lived, and Dr. McCrae, his son-in-law, was also a famous doctor, and that they both say leukemia has followed a blow.

There is no conflict in the evidence as to the automobile accident and injury, but it is earnestly contended that the medical profession is unable to determine the cause of leukemia, and that, therefore, the verdict of the jury is based on conjecture and speculation.

While the evidence shows that the medical profession is uncertain as to what may cause leukemia, it is not uncertain as to certain changes that take place in the blood in cases of leukemia; and those changes or conditions may result from a blow or injury. The doctors in this case testified that in their opinion the accident caused leukemia. The evidence also shows that the best authors and most eminent physicians state that it will follow a blow. That means, of course, that the blow will cause

leukemia. The evidence is not entirely satisfactory, but this is frequently true in the trial of civil cases, and this is one reason why civil cases must be determined according to the preponderance of the evidence. There might be very great doubt, and yet, if there is any substantial evidence at all, it is sufficient to support a verdict.

"We will not reverse the judgment because of the insufficiency of the evidence, for as we view the evidence, it is not physically impossible that appellee was injured as a result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner." *M. & N. A. Ry. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478; *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S. W. (2d) 689.

The above statement is the well established rule in this court. It may be highly improbable that the injury caused the leukemia, but it is not physically impossible, and the evidence of the physicians is substantial evidence, and in their opinion the injury caused leukemia. What they evidently mean by speculation is, as one doctor said: "Some physicians think one thing, and some another." It is the settled rule of this court that, in determining whether there was sufficient evidence to submit the case to the jury, we look at the evidence of the appellee alone.

"The fact that the appellate court would have reached a different conclusion had the judges thereof sat on the jury, or that they are of the opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence." 4 C. J. 859, 860.

"The verdict of a jury cannot properly be disturbed on appeal merely because of its appearing to be against the clear weight of the evidence, or because, if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did. If the verdict has any credible evidence to support it, any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations, it is proof against attack on appeal,

and that must be applied so strictly, on account of the superior advantages of court and jury for weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record." *Barlow* v. *Foster,* 149 Wis. 613, 136 N. W. 822.

"Under our system of jurisprudence it is the province of the jury to pass upon the facts. It is not only their privilege, but their right, to judge of the sufficiency of the evidence introduced, to establish any one or more facts in the case on trial. The credibility of the witnesses, the strength of their testimony, its tendency, and the proper weight to be given it are matters peculiarly within their province. The law has constituted them the proper tribunal for the determination of such questions. To take from them this right is but usurping a power not given. * * * When there is a total defect of evidence as to any essential fact, or a spark, a 'scintilla,' as it is termed, the case should be withdrawn from the consideration of the jury." *Cunningham* v. *Union Pac. Ry. Co.,* 4 Utah 206, 7 Pac. 795; *Equitable Life Assurance Society* v. *Felton,* 189 Ark. 318, 71 S. W. (2d) 1049; *Healey & Roth* v. *Balmat,* 189 Ark. 442, 74 S. W. (2d) 242; *Brown* v. *Dugan,* 189 Ark. 551, 74 S. W. (2d) 640; *C. R. I. & P. Ry. Co.* v. *Britt,* 189 Ark. 571, 74 S. W. (2d) 398. *Baldwin* v. *Wingfield, supra.*

It is true that verdicts cannot be based on conjecture or speculation, but there is no speculation about the doctors' swearing that trauma could cause leukemia, and there is no evidence that any other thing did cause it.

It is, therefore, not a matter of speculation. It is said by the Florida court: "So we have in this case, upon the one side the law of mathematical probabilities, and upon the other law of moral probabilities. 'Preponderance of the evidence' is a phrase which, in its last analysis, means probability of its truth. In a cause where

there is conflicting moral evidence, the jury in the one case, the chancellor in the other, is required to decide accordingly as the weight of evidence preponderates in favor of one proposition or the other. That is to say, having no personal knowledge of the transaction under investigation, they must, by the application of common knowledge and experience, decide which set of witnesses or line of evidence raises the greater probability of its consistency with truth." *Nellie T. Boyd, Admx., v. Lillian M. Gosser,* 78 Fla. 64, 82 So. 758, 6 A. L. R. 500.

"There is no doctrine of the law settled more firmly than the rule which authorizes issues of fact in civil cases to be determined in accordance with the preponderance or weight of the evidence. The reason of the rule no doubt is, that as between man and man, where a loss must fall upon one or the other, it is right that the law should cast upon him who is shown to have been the cause of the loss, by proof establishing the reasonable probability of the fact." 10 R. C. L. 1012; *Newman* v. *Great Shoshone & Twin Falls Power Co.,* 28 Idaho 764, 156 Pac. 111; *State of Washington ex rel. Berry* v. *Superior Court,* 139 Wash. 1, 245 Pac. 409, 45 A. L. R. 1530.

The jury was authorized to find, from the evidence in this case that the injury caused leukemia. We find no error, and the judgment is affirmed.

McHANEY, J., dissents.